IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WAKE FOREST UNIVERSITY HEALTH SCIENCES, | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | |
| v. | ) ) | 1:13CV111 |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, | ) ) ) | |
| Defendant/Counter-Plaintiff. | ) ) | |

<u>MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE</u>

This contract dispute comes before the Court on a Motion to Remand to State Court [Doc. #8] and Motion to Dismiss Counterclaims [Doc. #12] filed by Plaintiff Wake Forest University Health Sciences ("Plaintiff Wake Forest"). Defendant Regents of the University of California ("Defendant Regents" or "UCLA") removed this action from North Carolina state court on the basis of diversity jurisdiction. (Def's. Notice of Removal [Doc. #1].) Plaintiff Wake Forest argues that diversity jurisdiction does not exist pursuant to 28 U.S.C. § 1332 because Defendant Regents is the alter ego of the State of California and therefore is not a "citizen" under that statute. Defendant Regents argues that it is a citizen of California under § 1332. The Court held a hearing on these motions on July 11, 2012. For the reasons set out below, the Court recommends that Plaintiff Wake Forest's Motion to Remand to State Court be granted, that this action be remanded, and that Plaintiff Wake Forest's Motion to Dismiss Counterclaims be denied without prejudice.

I. FACTS, CLAIMS, AND PROCEDURAL HISTORY

Plaintiff Wake Forest alleges that in 2007, the parties entered into a cooperative agreement regarding a Vervet Monkey Research Colony ("VRC"). Pursuant to the Agreement, Plaintiff Wake Forest constructed a new facility in North Carolina in 2007 to house the VRC. According to Plaintiff Wake Forest, it has begun to face severe operating budget deficits for the VRC. Plaintiff Wake Forest alleges that it gave UCLA notice of these financial issues in March 2012 and proposed a restructuring of the parties' relationship to address the issues. According to the Complaint, when the parties could not reach an agreement, Plaintiff Wake Forest formally offered to transfer title of the VRC to UCLA pursuant to the Agreement. The parties negotiated further, but could not come to an agreement. On September 20, 2012, Plaintiff Wake Forest invoiced UCLA for $330,287.00, the amount constituting one-half of the VRC operating budget for fiscal year 2012. UCLA has not paid this invoice, and the parties now disagree on ownership of the VRC. Both parties accuse the other of breaching their Agreement.

Plaintiff Wake Forest filed this action in North Carolina state court in December 2012 seeking a declaratory judgment that the parties' Agreement has terminated, that Plaintiff Wake Forest has sole legal title to the VRC, that it is not in breach of the Agreement, and that UCLA is not entitled to invoke audit rights under the Agreement (First Claim for Relief). Plaintiff Wake Forest also seeks to quiet title to the VRC (Second Claim for Relief) and raises a claim for damages for breach of contract (Third Claim for Relief). Defendant Regents filed a Counterclaim [Doc. #6] seeking a declaratory judgment that the Agreement had terminated and that Plaintiff Wake Forest must offer to transfer title to the VRC at no cost to Defendant

Regents pursuant to the Agreement. Defendant Regents also filed a counterclaim for damages for breach of the Agreement and of a subaward agreement, and for breach of the implied covenant of good faith and fair dealing.

As noted above, Defendant Regents removed this action from North Carolina state court on the basis of diversity jurisdiction. Plaintiff Wake Forest thereafter filed the present Motion to Remand, contending that diversity jurisdiction does not exist pursuant to 28 U.S.C. § 1332 because Defendant Regents is the alter ego of the State of California and therefore is not a "citizen" of California for purposes of determining diversity of citizenship. Plaintiff Wake Forest also filed the present Motion to Dismiss, seeking dismissal of the counterclaims for lack of subject matter jurisdiction on the same basis. The Court held a hearing on these motions on July 11, 2013.

II.  DISCUSSION

   A.  Standard

When a case is removed from state court, the burden of demonstrating the existence of federal jurisdiction lies with the party seeking removal, in this case Defendant Regents. Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004). The Court must "construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated. Therefore, '[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary.'" Id. (quoting Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir.1994)).

Section 1441 of Title 28 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the

3

defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C.A. § 1441(a) (West 1994). In this case, Defendant Regents removed the case to this Court, alleging federal jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. Therefore, Defendant Regents bears the burden of establishing that jurisdiction is proper under § 1332. That statute provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332. Defendant Regents contends that diversity jurisdiction exists in this case because Wake Forest is a citizen of North Carolina and Defendant Regents is a citizen of California. However, Plaintiff Wake Forest contends that Defendant Regents is an arm of the state rather than a citizen of a state, and that this Court therefore lacks diversity jurisdiction.

The parties agree that a state itself is not considered to be a "citizen" of a state for purposes of diversity jurisdiction. See Moor v. Alameda County, 411 U.S. 693, 717 (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction."). In addition, "a public entity created under state law, which is 'the arm or alter ego of the State,' is likewise not a citizen for purposes of diversity jurisdiction." South Carolina Department of Disabilities and Special Needs v. Hoover Universal, Inc., 535 F.3d 300, 303 (4th Cir. 2008). Thus, if Defendant Regents is an "alter ego" or "arm" of the state, diversity jurisdiction is lacking and this case must be remanded. A previous case in this district considered a similar contention in a suit involving the University of North Carolina. See Roberson v. Dale, 464 F.

4

Supp. 680 (M.D.N.C. 1979). In that case, Judge Ward concluded that UNC was an "alter ego" of the State of North Carolina, and as a result, diversity of citizenship was lacking and the claims could only be pursued in state court because "a federal court has no jurisdiction under 28 U.S.C. § 1332 to hear a case where the defendant is merely an alter-ego of a state." Id. at 686, 689. The issue in dispute in the present motion, then, is whether Defendant Regents is in fact an "alter ego" or "arm" of the State of California.

In determining whether an entity is an alter ego of the state, the Court of Appeals for the Fourth Circuit has noted that "courts have generally looked to the standards announced in cases addressing whether governmental entities are entitled to Eleventh Amendment immunity as an arm of the state." Maryland Stadium Authority v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005); see also Roberson, 464 F. Supp. at 686 (noting that evaluation of Eleventh Amendment immunity "turns on precisely the same considerations as the non-constitutional argument that there is no diversity of citizenship").[1] The relevant factors include "whether the state treasury will be responsible for paying any judgment that might be awarded, . . . . [the] degree of autonomy from the state, whether it is involved with local versus statewide concerns, and how it is treated as a matter of state law." Ellerbe, 407 F.3d at 261 (citing Ram Ditta v. Maryland Nat. Capital Park and Planning Com'n, 822 F.2d 456, 457 (4th Cir. 1987)); Hoover

---

[1] The Eleventh Amendment includes aspects of both sovereign immunity and subject matter jurisdiction, while the statutory provisions of § 1332 specifically limit the subject matter jurisdiction of the Court. The tests for determining whether an entity is an "alter ego" of the state are the same for Eleventh Amendment and § 1332 purposes. However, Eleventh Amendment immunity can be waived, but the Court's subject-matter jurisdiction cannot be waived. Cf. Roberson v. Dale, 464 F. Supp. at 686 n.13 (noting that "a state cannot waive its non-'citizen' status or otherwise consent to be sued where 28 U.S.C. § 1332 is the jurisdictional base"). Defendant is not raising Eleventh Amendment immunity in this case, but the Court considers the cases regarding Eleventh Amendment immunity because that test applies for determining the subject matter jurisdiction question.

Universal, 535 F.3d at 303.  In applying this test to determine whether public universities are "arms" of the state, the Fourth Circuit has further noted that "[n]umerous courts have decided whether public state universities are 'arms of the state.'  Almost universally, the answer has been in the affirmative."  Ellerbe, 407 F.3d at 262 (collecting cases).

The Court of Appeals for the Ninth Circuit, the circuit in which the University of California is located, has adopted a similar test for determining whether an entity is an "alter ego" or "arm" of the state for purposes of the Eleventh Amendment.  See Doe v. Lawrence Livermore Nat. Laboratory, 131 F.3d 836 (9th Cir. 1997) (applying test set out in ITSI T.V. Productions, Inc. v. Agricultural Associations, 3 F.3d 1289 (9th Cir. 1993)).  Specifically, the Ninth Circuit has held that "[t]o determine whether a governmental agency is an arm of the state, the following factors must be examined: (1) whether a money judgment would be satisfied out of state funds, (2) whether the entity performs central governmental functions, (3) whether the entity may sue or be sued, (4) whether the entity has power to take property in its own name or only the name of the state, and (5) the corporate status of the entity. To determine these factors, the court looks to the way state law treats the entity."  ITSI, 3 F.3d at 1292.  The Ninth Circuit has specifically considered the application of this test as to the University of California, and held that "we conclude that the University is an arm of the State of California under the test of ITSI TV Prods. v. Agricultural Ass'ns, 3 F.3d 1289, 1292 (9th Cir.1993)."  Doe v. Lawrence Livermore National Laboratory, 131 F.3d at 839.  That case arose out of an earlier Ninth Circuit decision, Doe v. Lawrence Livermore Nat. Laboratory, 65 F.3d 771 (9th Cir. 1995) (Doe I), that had concluded that the Board of Regents was not an "arm of the state," at least in that case,

6

because a third party was responsible for indemnifying the University. However, the Supreme Court reversed the decision of the Ninth Circuit in Doe I and held that "[t]he Eleventh Amendment protects the State from the risk of adverse judgments, even though the State may be indemnified by a third party." See Regents of the University of California v. Doe, 519 U.S. 425, 431 (1997). The Supreme Court therefore concluded that Eleventh Amendment immunity applied to the University, but the Supreme Court declined the alternative request to "reexamine the validity of the Ninth Circuit cases holding that the University is an arm of the State," since that issue was outside the scope of the question on which certiorari was granted. See Doe, 519 U.S. at 431-32.[2] On remand, the Ninth Circuit specifically held that the University was an arm of the State of California under the relevant factors and in light of the Supreme Court decision. See Doe, 131 F.3d at 839 (Doe II).

Thus, the Ninth Circuit initially concluded in Doe I that the University of California was not an arm of the state, but that case was reversed by the Supreme Court, and on remand the

---

[2] In its briefing in that case, the Regents took the position that, applying the relevant factors, the Regents should be considered an "arm" of the state. That position is contrary to the position it takes in the present case. Plaintiff contends that this Court should apply "judicial estoppel" to preclude the Regents from taking a position different than it took before the Supreme Court in Doe. See Lowery v. Stovall, 92 F.3d 219, 223 (4th Cir. 1996) (noting the elements for judicial estoppel as follows: "First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. And the position sought to be estopped must be one of fact rather than law or legal theory. Second, the prior inconsistent position must have been accepted by the court. The insistence upon a court having accepted the party's prior inconsistent position ensures that judicial estoppel is applied in the narrowest of circumstances. . . . . Finally, the party sought to be estopped must have 'intentionally misled the court to gain unfair advantage.'" (citations omitted)). However, Defendant contends that it is simply taking a different legal position, and that the Supreme Court in Doe did not directly reach that issue or accept Defendant's position on this point. Having reviewed the information presented, the Court does have concerns regarding the Regents' apparently inconsistent positions. However, this Court would not conclude that Defendant has intentionally misled the Court to gain unfair advantage. Therefore, this Court is not relying on the doctrine of judicial estoppel. Nevertheless, the Court has considered the judicial determinations in the Doe case, including the decision of the Ninth Circuit on remand, as relevant and persuasive on this issue.

Ninth Circuit in Doe II concluded that the University of California was indeed an arm of the state. Moreover, in every other case in which it has considered the issue, the Ninth Circuit has concluded that the Regents of the University of California is an "alter ego" or "arm" of the State of California. See, e.g., Armstrong v. Myers, 964 F.2d 948, 949-50 (9th Cir. 1992) ("The Regents, a corporation created by the California constitution, is an arm of the state for Eleventh Amendment purposes."); Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989)("It has long been established that UC is an instrumentality of the state for purposes of the Eleventh Amendment."), overruled on other grounds by Bull v. City & County of San Francisco, 595 F.3d 964, 977 (9th Cir. 2010); BV Engineering v. University of California, Los Angeles, 858 F.2d 1394, 1395 (9th Cir. 1988) ("[T]he University of California and the Board of Regents are considered to be instrumentalities of the state . . . . and therefore enjoy the same immunity as the state of California." (internal quotation omitted)); Jackson v. Hayakawa, 682 F.2d 1344, 1350 (9th Cir. 1982) (noting the autonomy given to the University of California, but also noting that "the University of California and the Board of Regents are considered to be instrumentalities of the state for purposes of the Eleventh Amendment"); Hong v. Grant, 403 F. App'x 236, 237 (9th Cir. 2010) (holding that the "[University of California-Irvine] and its Board of Regents have long been understood to be instrumentalities of the State of California for Eleventh Amendment purposes"); Lafreniere v. Regents of Univ. of Cal., 255 F. App'x 275 (9th Cir. 2007) ("The district court properly dismissed LaFreniere's action as barred by the Eleventh Amendment. . . . The Regents, a corporation created by the California constitution, is an arm of the state for Eleventh Amendment purposes." (citations omitted)); Thompson v. Regents of the Univ. of

8

Cal., 206 F. App'x 714 (9th Cir. 2006) (affirming dismissal of suit against the University of California for lack of "subject matter jurisdiction due to the Regents' Eleventh Amendment immunity."); Feied v. Regents of Univ. of Cal., 188 F. App'x 559 (9th Cir. 2006) ("This Court has repeatedly held that the Regents are an arm of the state entitled to Eleventh Amendment immunity."); Ellis v. City of San Diego, Cal., 176 F.3d 1183, 1188 (9th Cir. 1999) ("[University of California-San Diego], as a subdivision of the State of California, is immune from damages under § 1983 and thus should be dismissed from the action."); Holman v. Board of Regents of the University of California, 919 F.2d 144 (9th Cir. 1990) ("The Board of Regents constitutes an instrumentality of the state and therefore is immune from suit under the eleventh amendment.").

Other federal courts, including the federal district courts in California, have reached the same conclusion. See Vaughn v. Regents of Univ. of Cal., 504 F. Supp. 1349, 1354 (E.D. Cal. 1981) (evaluating factors and "conclud[ing] that the Regents and the individual defendants sued in their official capacities are entitled to invoke the Eleventh Amendment immunity"); Selman v. Harvard Med. Sch., 494 F. Supp. 603, 615 (S.D.N.Y. 1980) ("Other factors also lead to the conclusion that the Regents is an 'arm of the state' immune under the Eleventh Amendment. Article IX section 9(a) of the California constitution provides that the Regents is a constitutional corporation whose ex officio members include state officials such as the Governor, Lieutenant Governor and Speaker of the Assembly. California statutes refer to the University of California as a state agency."); Qualls v. Regents, University of California, No. 1:13-CV-00649, 2013 WL 3341039, at *8 (E.D. Cal. July 2, 2013) ("The University of California and the Board of Regents

9

are considered to be instrumentalities of the state for purposes of the Eleventh Amendment."); Morgado v. Regents of University of California, No. C 13-1318, 2013 WL 2252115, at *5 (N.D. Cal. May 22, 2013) ("UCB and the Regents have long been understood to be instrumentalities of the State of California for Eleventh Amendment purposes. . . . Thus, the Regents are immune under the Eleventh Amendment."); Association for Information Media and Equipment v. Regents of the University of California, No. CV 10-9378, 2011 WL 7447148, at *2 (C.D. Cal. Oct. 3, 2011) (noting that the Board of Regents "is an 'arm of the state' for purposes of the Eleventh Amendment."); Doe v. Regents of University of California, No. CIV. 5-06-1043, 2006 WL 2506670, at *4 (E.D. Cal Aug. 29, 2006) ("The Ninth Circuit has made clear that '[t]he University of California and the Board of Regents are considered to be instrumentalities of the state,' and therefore, enjoy the same immunity as the state of California."). Other courts have also made similar determinations for purposes of the False Claims Act. See United States ex rel. Adrian v. Regents of the Univ. of Cal., 363 F.3d 398, 402 (5th Cir. 2004) ("While we have not previously determined whether the Regents is an arm of the state of California, the Ninth Circuit has consistently found that the Regents is an arm of the state for purposes of 42 U.S.C. § 1983 and the Eleventh Amendment even though it is organized as a corporation with the power to sue and be sued. . . . We see no reason to deviate from this consistent line of precedent. The California court properly dismissed the FCA claims against the Regents and Livermore because those entities are California state agencies and the FCA does not provide a cause of action against state agencies."); Donald v. University of California Board of Regents, 329 F.3d 1040 (9th Cir. 2003).

Finally, the District Court for the Northern District of California has specifically relied on these cases to conclude that the University of California is an "arm" of that state and not a citizen for purposes of 28 U.S.C. § 1332, and has remanded a case to state court for lack of subject matter jurisdiction on that basis. See Regents of the University of California v. Indemnity Insurance Company of North America, No. C 07-02721, 2007 WL 2253559, at *1 (N.D. Cal. August 3, 2007);[3] see also Ronwin v. Shapiro, 657 F.2d 1071, 1073 (9th Cir. 1981) (finding that the Board of Regents of the University of Arizona is "protected by the eleventh amendment, and further, that the Board is not a 'citizen' within the meaning of 28 U.S.C. § 1332."); Hughes-Bechtol, Inc. v. West Virginia Board of Regents, 737 F.2d 540, 544 (6th Cir. 1984) (concluding that the Board of Regents of the University of West Virginia was an "alter ego" of the state, not a citizen, and therefore diversity jurisdiction was lacking).

Despite this overwhelming weight of authority, Defendant Regents contends that this Court should nevertheless conclude that Defendant Regents is not an "alter ego" or "arm" of the State of California. Defendant cites to cases finding that certain other universities are not "arms" of their respective states. See, e.g., University of Rhode Island v. A.W. Chesterton Co., 2 F.3d 1200 (1st Cir. 1993); Kovats v. Rutgers, 822 F.2d 1303 (3d Cir. 1987); Gordenstein v. University of Delaware, 381 F. Supp. 718 (D. Del. 1974); University System of New Hampshire

---

[3] In that case, the Regents took the position that it was not a "citizen" and that diversity jurisdiction did not exist. That position appears to be contrary to the position Defendant Regents takes in the present case. However, at the hearing before this Court, Defendant distinguished that case as involving construction of a roadway in which the Regents stood in the State's place. Again, rather than relying on judicial estoppel, the Court simply views the decision of the California court as relevant and persuasive.

11

v. U.S. Gypsum Co., 756 F. Supp. 640 (D.N.H. 1991). In addition, Defendant Regents notes the factors to be considered by the Court:

> "(1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with 'the State [is] sufficiently close to make the entity an arm of the State.'"

Hoover Universal, 535 F.3d at 303. In considering these factors, Defendant Regents makes reasonable, non-frivolous contentions with respect to whether the Regents should be considered an arm of the State of California. As to the first factor, Defendant contends that any judgment against it will be paid by the Regents, not by the State. Defendant also notes that it maintains control of its own accounts, and only a small portion of its funding comes from the State. However, Plaintiff notes that in other cases, courts have concluded that a judgment against the University of California is a legal obligation of the State of California. In addition, consideration of this factor led the Ninth Circuit to conclude that the University is an arm of the State. See Doe II, 131 F.3d at 839 (noting that "[b]ecause the element of State liability is the single most important factor in determining whether an entity is an arm of the state, we conclude that the University is an arm of the State of California" (citation omitted)).

As to the second factor, Defendant points to the substantial autonomy of the Regents. Defendant notes that it holds title to the University's property, and is given authority to transfer property, to contract, to sue or be sued, and to delegate its authority. Defendant notes that it is a public corporation with a 26-member board comprised of 18 appointees selected by a citizen

12

commission and 7 ex officio members and 1 student member. Defendant contends that its funding comes primarily from sources other than the State, and that it sets tuition and controls its own operating accounts and is not subject to state audit. Defendant also notes that it is represented by its own counsel, not the State Attorney General. In Response, Plaintiff points out that the Board of Regents includes high-ranking state officials, including the Governor, Lieutenant Governor, Speaker of the Assembly, and Superintendent of Public Instruction, as well as members appointed by the Governor and approved by the State Senate. In addition, some portion of the University's funding (at least $2.4 billion annually according to Defendant's evidence) comes from State appropriations, and there is evidence of some inclusion in at least occasional audits by the Bureau of State Audits that may result in "recommendations" to the Regents. In addition, the California Constitution provides that the University is subject to "legislative control as may be necessary to insure the security of its funds and compliance with the terms of the endowments of the university and such competitive bidding procedures as may be made applicable to the university by statute for the letting of construction contracts, sales of real property, and purchasing of materials, goods, and services." Cal. Const. Art. IX Sec. 9(a). The Board's authority over property must be exercised "for the benefit of the university or incidentally to its conduct" and subject to competitive bidding provided by statute. Cal. Const. Art. IX Sec. 9(f). Thus, the Board has significant, but not complete, autonomy.

As to the third factor, Defendant acknowledges that it is involved in state-wide concerns, although Defendant contends that its focus on higher education and its autonomy should support a finding that Defendant is not an arm of the state. For its part, Plaintiff contends that

like the University of Maryland in Ellerbe, the University of California is engaged in educating the youth of the state, which is a statewide concern, with branch campuses across the state. See Ellerbe, 407 F.3d at 265 (noting that "[h]igher education is an area of quintessential state concern and a traditional state governmental function").

Finally, as to the fourth factor, Defendant contends that state courts recognize the broad powers vested in the Board of Regents. See San Francisco Labor Council v. Regents of the University of California, 26 Cal. 3d 785, 788 (Cal. 1980); Regents of University of California v. Superior Court of Alameda County, 17 Cal. 3d 533, 537 (Cal. 1976); Ishimatsu v. Regents of the University of California, 266 Cal. App. 2d 854, 864 (Cal. App. 1968). However, Plaintiff notes that in numerous state cases, the University is treated as an arm of the state. See, e.g., Regents of the University of California v. City of Santa Monica, 77 Cal. App. 3d 130 (Cal. App. 1978) (noting that the Regents, as a constitutionally created arm of the state, have virtual autonomy in self-governance, and that an ordinance excluding "the state" by implication excludes statewide agencies with plenary constitutionally-granted powers such as the Regents); Kim v. Regents of the University of California, 80 Cal. App. 4th 160, 165 (Cal. App. 2000) (holding that "[t]he University is a statewide administrative agency with constitutionally derived powers. . . . Its employees are public employees. . . .The University is administered by the Regents. . . . Regents have rulemaking and policymaking power in regard to the University; their policies and procedures have the force and effect of statute."); Campbell v. Regents of the University of California, 35 Cal. 4th 311, 321 (Cal. 2005) ("Thus, the Regents have been characterized as 'a branch of the state itself' or 'a statewide administrative agency'" (citations omitted)); Goldbaum

14

v. Regents of the University of California, 191 Cal. App. 4th 703, 714 (Cal. App. 2011) (noting that "[t]he Regents is an arm of state"); Goldberg v. Regents of the University of Cal., 248 Cal. App. 2d 867 (Cal. App. 1967) (noting that "the University is a constitutional department or function of the state government").[4]

If this Court were to undertake further fact-finding and weighing of these factors in this case, Plaintiff Wake Forest would first be entitled to the opportunity to undertake jurisdictional discovery, so that it could respond further as to the factual assertions made by Defendant Regents. However, the Fourth Circuit has cautioned that "courts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." Hartley v. CSX Transp., Inc., 187 F.3d 422, 425 (4th Cir. 1999). "[S]ubject matter jurisdiction goes to the very power of the court to act," and if this Court proceeds in this case but subject matter jurisdiction were ultimately determined to be lacking, all of the proceedings in this Court would be vacated "regardless of the waste resulting" since "an order or judgment entered by a court without subject matter jurisdiction is a nullity." Hoover, 535 F.3d at 303. In the circumstances, there is no need to undertake time-consuming jurisdictional discovery, since even on Defendant's presentation, this Court's jurisdiction is, at best, doubtful. Therefore, following the clear weight

---

[4] In considering these factors, Defendant contends that it may be an "arm of the State" for some purposes but not others. The Supreme Court in Doe specifically noted that it was not resolving the question of whether there may be "some state instrumentalities that qualify as 'arms of the State' for some purposes but not others." Regents v. Doe, 519 U.S. at 427 n.2. However, Defendant has not pointed to any cases in which the University of California was held not to be an "arm of the State" for purposes of Eleventh Amendment immunity, nor has Defendant cited any cases where a court recognized that Defendant could be an "arm of the state" entitled to Eleventh Amendment immunity for some purposes but not others (other than the decision in Doe I that was subsequently reversed by the Supreme Court).

of the authority presented and having considered the contentions of the parties, this Court recommends that this matter be remanded to North Carolina Superior Court.

With respect to Plaintiff's Motion to Dismiss Counterclaims, the Court notes that the Motion to Dismiss is based on the same jurisdictional contentions as the Motion to Remand. At the hearing in this matter, the parties agreed that, if the Court recommended a remand of the claims, a remand of the counterclaims would likewise be appropriate. Therefore, the Court recommends that all claims and counterclaims be remanded, and that Plaintiff's Motion to Dismiss be denied without prejudice to Plaintiff filing a motion to dismiss in state court following the remand.

Finally, the Court notes that Plaintiff has requested costs and attorney fees incurred in filing the Motion to Remand. The Supreme Court has held that an award of fees and costs is appropriate where the removing party "lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). As noted above, the Defendant raised reasonable, non-frivolous contentions to support its position that it should not be viewed as an "arm" of the State of California. Although this Court is not persuaded by those contentions in light of the weight of contrary authority and the jurisdictional questions that must be resolved in favor of remand, the Court would not conclude that Defendant's position was so baseless as to warrant an award of fees and costs.

III.   CONCLUSION

IT IS THEREFORE RECOMMENDED that Plaintiff's Motion to Remand [Doc. #8] be GRANTED, and this case be remanded to North Carolina Superior Court, Forsyth County, for further proceedings.

IT IS FURTHER RECOMMENDED that in light of the remand, Plaintiff's Motion to Dismiss [Doc. #12] be DENIED without prejudice to Plaintiff filing a Motion to Dismiss in state court following the remand.

IT IS FURTHER RECOMMENDED that Plaintiff's request for attorney's fees and costs be DENIED.

This, the 19th day of July, 2013.

                                                 /s/ Joi Elizabeth Peake
                                                 United States Magistrate Judge